38 C.C.P.A.(Patents)

### In re RIGGS.
### Patent Appeals No. 5761.

United States Court of Customs and
Patent Appeals.

May 8, 1951.

R. H. Waters, Akron, Ohio (Edmund H. Parry, Jr., Washington, D. C., and William L. Scherer, Chicago, Ill., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting all of the claims, numbered respectively 8, 9, and 10, of appellant's application, serial No. 504,021 on a bevel seat rim for tires.

Claim 8 was selected by the board as illustrative. It reads:

"8. A rim assembly comprising a rim having an endless, generally cylindrical base portion at one end of which is formed an integral gutter with a seat portion of increasingly greater diameter than the base portion extending in a direction away from that end of the base portion opposite the gutter and terminating in an integrally formed flange; a split locking ring having a portion thereon for interlocking engagement with the gutter on the rim and a beveled seat portion corresponding generally to that of the rim but extending in a direction opposite thereto; and an endless ring interfitting with and supported by the locking ring."

The application discloses a multipart rim assembly for mounting pneumatic tires on vehicles, particularly the larger sizes of tires employed for buses, trucks, tractors, etc. Such heavy tires have stiff and inextensible beads making it impossible to force them over the side flange of a rim as is done with ordinary automobile tires and thus necessitating some type of removable side flange so that the tires may be demountable. The claimed device comprises a separable rim consisting of three parts: an endless base portion, a split locking ring, and an endless tire retaining ring (flange). The endless base portion is generally cylindrical in shape and has an integral tire retaining flange at one edge. Adjacent this edge and flange the base portion is beveled so that its diameter is largest where the base meets the flange. At the other edge of the base portion is a gutter, shaped to receive and retain the split locking ring in interlocking engagement. The locking ring has a beveled seat portion and an abutment adapted to engage and support the endless tire retaining ring. As the tire is inflated the beads are forced laterally towards the flanges and into wedging engagement with the beveled bead seats. This positive engagement prevents relative motion between rim and tire and allows direct trans-

mittal of load from the tire to the rim through the beveled seats.

The following patents were cited as prior art:

| Klaus | 1,493,040 | May 6, 1924; |
| Klaus et al. | 1,499,739 | July 1, 1924; |
| Brink | 2,367,823 | Jan. 23, 1945; |
| Kronprinz (French) | 834,215 | Aug. 8, 1938. |

The Klaus patent shows a three-piece rim of the same general type as applicant's but without any beveled bead seats and with the removable bead seat being formed on the removable flange rather than on the split locking ring.

The patents to Klaus et al. and to Brink each disclose a two-piece rim assembly. In the assembly of Klaus et al. the removable flange is split, carries a bead seat, and interlocks with a retaining gutter of appellant's type. Neither bead seat is beveled. The removable flange of Brink is an endless ring, carries a beveled bead seat, and is secured to the rim base by bolting. Both of Brink's bead seats are beveled.

The French patent to Kronprinz, the basic reference, relates to a three-piece rim assembly including one integral flange with a beveled bead seat adjacent thereto and one removable flange in the form of an endless ring. The rim base is conically flared at the removable flange end and a wedging ring member formed in two halves fits thereover forming a flat bead seat. The inner surface of the removable flange is also beveled to fit in wedging engagement with the outer conical edge of the ring member. Thus when the tire is inflated, lateral pressure forces the removable flange onto the seat forming ring member which in turn is forced into wedging engagement with the flared portion of the rim base.

The claims were rejected as being unpatentable over the patent to Kronprinz in view of either the Klaus or Klaus et al. patents and the Brink patent. It was the board's opinion that no invention would be involved in replacing the Kronprinz wedging arrangement with the gutter construction disclosed in the Klaus or Klaus et al. patents nor in providing a beveled seat portion on the Kronprinz assembly in view of the Brink patent.

It is conceded that were one to reconstruct the Kronprinz assembly along the lines suggested by the board a perfect anticipating structure would result. Appellant contends, however, that in view of the prior art the reconstruction was unwarranted and could not have been made without the exercise of invention.

The Kronprinz assembly lacks the gutter locking means and the beveled removable locking ring of applicant's device. It was the board's position that the wedging interlocking construction of the Kronprinz assembly could be replaced with the gutter construction disclosed in the Klaus or Klaus et al. patents without the exercise of invention. The solicitor points out that such a change would require no more than a minor reshaping of two elements of Kronprinz's structure. We find ourselves in agreement with the board on this point.

It was the board's further contention that it would not require inventive ability to provide the locking ring with a beveled seat portion in view of the patent to Brink which discloses a beveled seat portion on a removable rim.

It is apparent that Kronprinz was aware of the use of beveled bead seats since the seat on his rim base was of that type. For some reason he deliberately chose to make the removable bead seat on his split locking ring flat. An insight into his reason for so doing might be gained from a passage in his specification which states:

"When the tire is further inflated, *the heel of the envelope strongly pushes back the flange-forming ring* on the two halves of the wedge-forming ring and clamps these against the body of the wheel. The forces originating in the tire are then transmitted directly from the tire, *through the agency of the flange-forming ring* and of the wedge-forming ring, onto the undulated lateral disks of the wheel and to the ball bearings, by the most direct route. [Italics ours.]"

Hence it appears that Kronprinz needed strong lateral pressure on his removable flange in order to have his device accomplish the described transmittal of pressure.

Appellant argues that had the removable bead seat been beveled, vertical transmission of pressure would result, contrary to Kronprinz's desire, and at least a sizeable portion of the lateral thrust on the flange-forming ring would be removed. This contention seems reasonable and is illustrated in appellant's Exhibit C which graphically depicts the forces acting upon a tire and rim.

The solicitor did not contest appellant's explanation of the effect of beveling on the direction of force transmittal, but offered his own reasons for Kronprinz's action. It was the solicitor's contention that Kronprinz chose not to bevel his removable bead seat "on the assumption that wedging action on one side of the rim would be sufficient to prevent relative movement of the tire and rim." If, as the solicitor's position implies, beveling of the second bead seat would not have interfered with the coaction of the members in Kronprinz's assembly, it seems strange that Kronprinz would not have beveled both seats since so doing would have doubled the adhesion between tire and rim and would not have added at all to the cost or difficulty of production of the device. Clearly the wedging ring member could have as easily been manufactured beveled as flat. The solicitor's explanation appears particularly strained in view of the patent to Brink which not only shows the desirability of beveled bead seats but explains why they were not used sooner. The specification states: "Another feature of the construction of the invention made possible by the provision of flange 20 on the rim side ring is that inwardly directed, tapered bead seats 25 and 26 can be formed on the rim base 11 and rim side ring 14 respectively. These bead seats enable the rim 10 to grip a tire mounted thereon at the beads thereof. In previous types of divided rim or wheel constructions the use of tapered bead seats has not been possible because the rim side ring was seated on the extreme edge of a rim base and the rim base carried both beads of the tire. Hence the use of tapered bead seats was impossible because the tire had to be telescoped over one bead seat of the rim base in order to position same thereon."

Since Kronprinz's structure was eminently adapted to the use of two beveled bead seats it is highly improbable that he chose to use only one because he thought one would be sufficient.

Thus the mere beveling of the bead seat on the split locking ring produces marked changes in the mode of operation of the Kronprinz device and some basis for predicting such change should be found in the prior art if it is to be called non-inventive.

The only patent of record, utilizing beveled bead seats, other than that to Kronprinz, is the one to Brink. That assembly, however, employs an *endless* removable bead seat which structure precludes vertical pressure transmittal therethrough. The patents to Klaus and Klaus et al., while showing split ring bead seats, through which vertical pressure might be transmitted, fail to show any beveling. The prior art, therefore, fails completely to show vertical pressure transmittal through a split bead seat ring or the desirability of such an expedient, and the patent to Kronprinz shows a definite desire to utilize lateral rather than vertical pressure transmittal. While it may well be that an ordinary mechanic might have physically constructed the claimed device from prior art elements, it does not appear that there is any teaching in the prior art which might have led him so to do. The beveling of appellant's split locking ring bead seat, interlocked through a gutter construction, causes the load to be transmitted vertically through the split locking ring, whereas all of the prior art teaches the use of lateral pressure transmittal where locking rings are used.

In view of the foregoing, we are of opinion that the proposed reconstruction of the Kronprinz device involves a new coaction of the elements to produce an unobvious result which is beyond the skill of the average artisan.

It is well settled that the assembly of features individually old in various prior art references involves a new and patentable combination where a new coaction of

elements or an unobvious result is obtained. In re Champeau, 34 F.2d 1012, 17 C.C.P.A., Patents, 568; In re Huntzicker, 90 F.2d 366, 24 C.C.P.A., Patents, 1325.

 For the reasons stated, we are of opinion that the Board of Appeals erred in rejecting the appealed claims. Its decision is, therefore, reversed.

Reversed.